# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 CR 946 - 1 | **DATE** | 3/21/2003 |
| **CASE TITLE** | UNITED STATES vs. IVAN EBERHART | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 4/4/03 at 10:30 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Motion (118-1) for new trial is granted.**
(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| ☐ No notices required, advised in open court. | |
| ☐ No notices required. | number of notices |
| ☐ Notices mailed by judge's staff. | |
| ☐ Notified counsel by telephone. | MAR 24 2003 date docketed |
| ✓ Docketing to mail notices. | |
| ☐ Mail AO 450 form. | docketing deputy initials |
| ☐ Copy to judge/magistrate judge. | |
| DW / courtroom deputy's initials | date mailed notice |

Document Number: 139

03 MAR 23 PM 2:50
U.S. DISTRICT COURT CLERK
Date/time received in central Clerk's Office

UNITED STATES OF AMERICA,

    Plaintiff,

v.

IVAN EBERHART,

    Defendant.

No. 98 CR 946
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Defendant Ivan Eberhart was convicted of a drug conspiracy but acquitted of a substantive drug offense, which was alleged to be part of the drug conspiracy. He has filed a multi-issue motion for a new trial or acquittal and then an addendum. My views on many of the issues are set forth in the record, and thus I do not address them, but there are three issues worthy of extended consideration: (1) the testimony that Bolden gave the name "E" as his supplier; (2) the possibility that a transcript is not supported by the tape; and (3) the absence of a buyer-seller instruction.

At trial, I permitted the agents to state that Charles Bolden told them that his source of supply was an individual nicknamed "E." The agents then had Bolden set up a meeting with "E" who turned out to be Eberhart. I admitted this evidence, not for its truth, but to explain why the officers did what they did. Were I to rule on this issue again, I might rule differently because there was no hint in the opening statement that Eberhart planned to defend on the ground of improper law enforcement. Instead, the defense was that Bolden gave up Eberhart's name because Bolden knew Eberhart–a fact difficult to deny given the 196 calls made between the two men in a sixth-month period–from legitimate dealing in the music business and Bolden owed

Eberhart money. The agents were entitled to explain why they did what they did, but they did not need to say that Bolden said, in essence, that "E" is my supplier.

The more pressing question, however, is whether Eberhart's position was worsened by this evidence. The answer is probably not, but even if it was, it was worsened by an amount so slight that the error, standing alone, would not justify a new trial. The jury was entitled to know and was told, in large part without objection, that when someone like Bolden is arrested the agents try to go up the chain. The jury would have known that Bolden set up the meeting with Eberhart and heard a good deal of the meeting via tape recording. It is therefore difficult to imagine how a jury could have thought anything but that Bolden named Eberhart. However, they could not have used that as substantive evidence of Eberhart's guilt if they followed my instructions, which I must presume they did.

Knowing this, Eberhart casts his argument in a different way and weaves together three separate arguments. By letting the jury hear that Bolden talked of "E" to the agents, so the argument goes, Bolden became an accuser. As an accuser, he was unreliable because he told many different stories which Eberhart was precluded from introducing to the jury because the government did not call Bolden as a witness. By using Bolden's statement to the agents, therefore, the prosecution got in an identification of Eberhart from a witness who could not be impeached. This error was compounded by the failure to give a missing witness instruction.

This argument misses the mark. It is true that Bolden told many different stories and admitted lying to the agents, but Eberhart, he said, was always the one who gave him drugs (on varying dates, in varying quantities, and at varying locations). There could have been no impeachment on the central point that Bolden named Eberhart as a supplier. Moreover, the

2

prosecution relied on Bolden neither at trial nor in the investigation. His actions were always monitored by the agents. Furthermore, I do not recall any government witness or lawyer who said Bolden was reliable. It is difficult to believe, in light of the split verdict, that the jury thought much of Bolden. Bolden was not an accuser in the context of this case, and it was not in anyone's interest except Eberhart's to make him an accuser.

Bolden started in this case as a cooperating witness, but the government thought he was not completely truthful, and the cooperation agreement fell apart. He subsequently stood trial and was convicted. He was not a witness in the control of the prosecution whose absence can be held against the prosecution. As I mentioned at trial, I would have been willing to writ or subpoena Bolden (or any other witness, for that matter) to court if Eberhart wanted him as a witness. Witnesses like Bolden are the very reason why missing witness instructions are disfavored in this Circuit. They are the kind of witnesses who are a disaster for whoever calls them to the stand, even if examined adversely. Regarding Bolden, whatever he would say on a defense direct would be severely damaged by what he would have to say on prosecution cross, and whatever he would say on a prosecution direct would be severely damaged by what he would have to admit on a defense cross. Nearly all trial counsel would rightly choose to be the cross-examiner because it is they who usually score the most points in these situations. Bolden was not a missing witness. He was an undesirable witness belonging to no one.

The second issue meriting discussion here concerns the tape recordings in which Eberhart was heard to say things that a reasonable jury could find to be strong evidence that the two men were engaged in a drug conspiracy. The tape recordings were authenticated by agents who heard part of the conversation as it was occurring and testified that the recordings were accurate as to

3

what they heard. This is enough. If the finder of fact believes this testimony, then the finder of fact can infer from the accuracy of a substantial part of the recording, that the recording device was operating properly and that the entire tape is an accurate recording. Of course, this evidence can be contradicted by someone who says the recording is inaccurate, but no one did so here. It is now claimed that one of the transcripts is inaccurate. The jury was instructed that the words that mattered were those on the tape and not those on the transcript. Even though the supposed error is found in just one transcript, and even though Eberhart had the opportunity to have the evidence he has proffered now presented at the trial, the new evidence regarding the transcript is nonetheless troubling. The transcript denoted Eberhart saying "I'm going to talk to you face to face." There is now reason to believe the words may not be appropriately discerned and the jury should have been informed of this. These words matter here because the jury was rightly told that "face to face" meetings are par for the course in criminal enterprises that fear wiretaps. Both prosecutors emphasized this in their respective closings.

The last issue meriting discussion is the argument that I ought to have given a buyer-seller instruction. Buyer-seller instructions are offered with some regularity in drug conspiracy cases. In this case, however, there are factors that militate against the defense. Eberhart and Bolden had a long term association and, if one listens to the tape, a substantial degree of mutual trust. There is evidence from Eberhart that with respect to another member of the conspiracy—one of the unknown others—Tommy, Eberhart was permitted to take drugs on consignment and at certain pre-set times. This is a sign of trust based on both a regularized course of transacting business and regular payment for the goods. Nevertheless, there is a decent argument that the buyer-seller defense should not have been removed from the jury's

4

consideration. The evidence of the conspiracy with Tommy came, with some corroboration, from the confession of Eberhart. The evidence of that relationship is far from complete because the agents never got their hands on Tommy. The relationship of Bolden to Eberhart is, in some respects, arguably one of buyer-seller although the jury acquitted Eberhart of the one sale. It is also true that the buyer-seller argument would, I think, have had little chance of succeeding.

Taken by themselves, none of these concerns standing alone or in pairing would cause me to grant a new trial. However, the combination of all three causes me to grant the motion for new trial. The possibility that a transcript is not supported by the tape, the absence of a buyer-seller instruction and, this is least significant, the testimony that Bolden gave the name "E" as his supplier all together persuade me that the interests of justice require a new trial. I believe a new trial will quite likely lead to another conviction (and, indeed, Eberhart's acquittal of the substantive transaction may put him in a tactically much worse position at a retrial), but the result in a second trial will be less subject to my doubts than the first one has been.

For the aforementioned reasons along with the material on the record, Eberhart's Motion for New Trial is GRANTED but his Motion for Judgment of Acquittal is DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: MAR 2 1 2003

5